IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ALLEN M.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No. 7:17-cv-266 |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | **By: Hon. Robert S. Ballou** |
| **Acting Commissioner of Social Security,** | ) | **United States Magistrate Judge** |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Allen M. ("Allen") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Allen alleges that the Administrative Law Judge ("ALJ") failed to properly evaluate his visual limitations and erred in giving less weight to the opinion of the consultative examiner. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Allen's Motion for Summary Judgment (Dkt. 12), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 14).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Allen failed to demonstrate that he was disabled

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Allen protectively filed for DIB on May 10, 2013, claiming that his disability began on December 4, 2012.[3] R. 212. The Commissioner denied the application at the initial and reconsideration levels. R. 85, 101. On May 18, 2016, ALJ Thomas W. Erwin held an administrative hearing to consider Allen's disability claim. R. 32–63. Allen was represented by an attorney at the hearing, which included testimony from Allen and vocational expert Mark Hileman. Id.

On June 7, 2016, the ALJ entered his decision analyzing Allen's claim under the familiar five-step process,[4] and denying Allen's claim for disability. R. 11–26. The ALJ found that Allen

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Allen first claimed that June 1, 2012 was his alleged date of onset, but he amended it to December 4, 2012 at his administrative hearing.

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460–62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the

2

suffered from the severe impairments of degenerative disc disease, osteoarthritis of the left shoulder, obesity, diabetes mellitus with peripheral neuropathy, and the presence of a foreign metallic object in his right foot with a heel spur. R. 13. The ALJ determined that Allen retained the residual functional capacity ("RFC") to perform a limited range of light work and that he (1) can lift and carry 10 pounds frequently and 20 pounds occasionally; (2) can stand and walk for six hours in an eight-hour workday and sit for two hours in an eight-hour workday; (3) can occasionally reach overhead with his left upper extremity, balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; (4) can never climb ladders, ropes, or scaffolds; and (5) "must avoid more than occasional exposure to vibration, operational control of moving machinery, unprotected heights, and hazardous machinery. R. 16. The ALJ determined that while Allen cannot return to his old job as a garbage collector, he can work jobs that exist in substantial numbers in the national economy such as cashier II, checker, and laundry folder. R. 24–25. Thus, the ALJ concluded that Allen was not disabled. R. 26.

Allen appealed the ALJ's decision to the Appeals Council, but his request for review was denied. R. 1–3. This appeal followed.

## ANALYSIS

Allen contends that the ALJ erred by finding that his visual limitations were non-severe and by giving less weight to the opinion of the consultative examiner.

### Visual Impairments

Allen has a history of diabetic retinopathy. In July 2013, Allen's family physician, Lewis J. Singer, M.D., referred him to John C. Randolph, M.D., at the Vistar Eye Center. R. 466. On August 2, 2013, Allen reported blurry vision, distorted faces on television screens, and visual

---

claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

acuity affected at all distances. R. 546. Dr. Randolph conducted a visual acuity examination and found Allen's right eye vision to be 20/100-1 and left eye vision to be 20/30. R. 547. Dr. Randolph diagnosed clinically significant diabetic macular edema ("CSDME"), diabetic retinopathy, and diabetes with ophthalmic manifestations. R. 549. Dr. Randolph administered Avastin injections for Allen's CSDME in his right eye, explained that laser treatment may be necessary for his left eye, and counseled him to monitor his blood pressure and blood sugar levels. Id. Allen followed up with Dr. Randolph on August 8, 2013, reporting stable vision that is still blurry in his right eye. R. 539. An eye examination showed 20/70 right eye vision and 20/30+3 left eye vision. R. 540. Dr. Randolph performed a grid laser procedure on Allen's right eye, and counseled him to monitor his blood pressure and blood sugar levels. R. 542. Allen returned to Dr. Randolph on August 16, 2013, explaining that his vision has improved since the grid laser treatment. R. 535. Allen's vision had improved to 20/80 in his right eye and 20/30+3 in his left eye. Dr. Randolph performed another grid laser treatment on Allen's right eye, and directed him to follow up in two months. R. 537.

Allen returned to Dr. Randolph in October 2013, reporting no changes in visual acuity, occasional dryness in his right eye, and occasional wateriness in his left eye. R. 530. Allen described his symptoms as mild. Id. Dr. Randolph stated that Allen does not monitor his blood sugar on a regular basis. Id. Allen's vision was 20/100+1 in his right eye and 20/30 in his left eye. R. 531. Dr. Randolph noted decreased edema in Allen's right eye and explained that another grid laser procedure may be necessary. He cautioned Allen once again on the "ocular and systemic benefits of proper [blood pressure and blood sugar] control." R. 533

Allen returned to Dr. Randolph in December 2013. R. 525. Allen's central vision was distorted in his right eye, but he did not report any new complications. Id. Allen's vision was

4

rated as 20/100 in his right eye and 20/25 in his left eye. R. 526. Dr. Randolph conducted a focal laser treatment on Allen's right eye and again emphasized the benefits proper blood pressure and blood sugar control can have on his vision. R. 528.

In January 2014, Allen reported stable vision overall with no new complications. R. 520. Allen's vision was rated as 20/100 in his right eye and 20/25 in his left eye. R. 521. Dr. Randolph noted that Allen's edema decreased. R. 523. Dr. Randolph counseled Allen to follow up in one month and to properly control his blood pressure and blood sugar levels. Id.

Allen returned to Dr. Randolph in February 2014, reporting stable vision overall with no new complications. R. 516. Allen's vision was rated at 20/70 in his right eye and 20/25 in his left eye. R. 517. Dr. Randolph found decreased edema. R. 519. Dr. Randolph counseled Allen to follow up in three months and to properly control his blood pressure and blood sugar levels. Id.

In May 2014, Allen reported stable vision, but stated the "only thing I've noticed is that sometimes colors will be different shades between eyes—a blue sky will look light blue [in my left eye] and dark blue [in my right eye]." R. 511. Allen reported that his symptoms are mild. Id. Allen explained that he does not regularly check his blood sugar. Id. Allen's vision was rated as 20/70-1 in his right eye and 20/30 in his left eye. R. 512. Dr. Randolph explained that Allen's edema was "fairly stable." R. 514. Dr. Randolph counseled Allen to properly maintain his blood pressure and blood sugar levels. Id.

The ALJ found that Allen's history of diabetic retinopathy with macular edema was not a severe impairment. R. 13. The ALJ explained that Allen's "diabetic retinopathy responded well to treatment, allowing for improved vision." R. 14. A "severe impairment" is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A severe impairment "must result from

5

anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," not "[the claimant's] statement of symptoms, a diagnosis, or a medical opinion." 20 C.F.R. § 404.1521. An impairment is not severe if it causes only "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis removed) (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). While the failure to list an impairment as severe at step two does not necessitate a remand, the ALJ must still "discuss all of the medical evidence." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted).

The ALJ included a narrative discussion of Allen's medical history and cited pertinent medical records which showed that Allen's symptoms were mild, his treatment was effective, his vision improved, and his irregular monitoring of his blood sugar negatively affected his vision. Indeed, Allen consistently reported mild symptoms such as seeing "wavy" letters, color distortion, and general blurriness. See, e.g., R. 511, 531, 546. Allen's treating physician conducted several laser procedures to alleviate his symptoms. Allen's vision was 20/100-1 in his right eye and 20/30 in his left eye when he first saw Dr. Randolph in August 2013, and it improved to 20/70-1 in his right eye and 20/30 in his left eye at his last appointment with Dr. Randolph in May 2014. Additionally, Allen's edema of his right eye continued to decrease over the course of his treatment with Dr. Randolph. Allen does not point to evidence the ALJ failed to consider which showed that Allen's visual impairment significantly limited his ability to engage in basic work activities. That is, Allen's visual condition causes only "a slight abnormality which has such a minimal effect on [Allen] that it would not be expected to interfere with

[Allen's] ability to work." Evans, 734 F.2d at 1014 (emphasis removed) (quoting Brady, 724 F.2d at 920).

Allen also contends that ALJ erred by failing to account for any limitations from his visual impairments in the RFC. Here, the ALJ discussed Allen's daily activities, his disability reports and questionnaires, and his testimony at the administrative hearing. The ALJ explained that Allen reported an ability to drive a car, go out alone, play videogames, use Facebook, mow the lawn using a riding lawnmower, prepare meals, write checks, and count change. These activities—especially driving a car and operating a riding lawnmower—require adequate vision.

Allen's daily activities led the ALJ to conclude that Allen's subjective assertions of the severity of his visual impairments were not consistent with the objective medical evidence. The record shows that the medical treatment for his visual problems was effective and allowed Allen to engage in activities which require adequate vision. No medical expert who examined and treated Allen or reviewed the record offered an opinion that his visual limitations impacted his ability to engage in significant work activities or that the RFC should contain any restrictions. Thus, I find that substantial evidence supports the ALJ's finding that Allen's diabetic retinopathy was not a severe impairment or otherwise to limit the RFC because of any visual limitations.

**Opinion of Consultative Examiner**

Allen contends that the ALJ erred by giving less weight to the opinion of William Humphries, M.D., who completed a consultative examination in November 2013. R. 480–83. Dr. Humphries noted that Allen has suffered from pain in his left shoulder and neck for five or six years. R. 480. Allen has had injections in his shoulder but not his neck, has not had surgery, and has improved with physical therapy. R. 480. Dr. Humphries found that Allen has had lower back pain for thirteen years due to a pinched nerve and a pulled muscle, but has not had surgery or

7

injections in his lower back. Id. Dr. Humphries explained that Allen reported he cannot walk more than 50 yards without stopping due to right foot pain and lower back pain. Id.

Dr. Humphries diagnosed Allen with obesity; diabetes mellitus, insulin-dependent with peripheral neuropathy in all four extremities; chronic cervicothoracic and lumbar strain with peripheral neuropathy in left upper and left lower extremities; and retained foreign body in his right foot with a possible infection. R. 482. Dr. Humphries explained that Allen is limited to (1) sitting six hours in an eight-hour workday and standing and walking two hours in an eight-hour workday; (2) lifting 10 pounds frequently and 20 pounds occasionally; (3) occasional climbing, kneeling, and crawling; (4) no contact with heights, hazards, and fumes; and (5) no operation of any right foot controls. R. 482–83.

The ALJ gave less weight to Dr. Humphries because he "seemingly indicate[d] that [Allen's] right foot injury would cause more lasting limitations." R. 23. The ALJ explained that Allen had stepped on the wire one month prior to Dr. Humphries's evaluation, but improved after that and did not report any issues with his right foot at subsequent medical appointments. Id. The ALJ specifically took issue with Dr. Humphries's walking limitations, explaining that "[o]verall, while [Allen] may experience some continued pain, the evidence does not support the walking limitations assessed." Id.

When the ALJ evaluates the opinions of non-treating physicians and non-medical sources, the ALJ must weigh three factors: "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion." Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(3)–(5)). More weight

is "generally" given to a source who has examined the claimant than to one who has not. See § 404.1527(c)(1).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

Prior to the relevant period,[5] Allen sought treatment for pain in his neck, left shoulder, and lower back. In July 2011, Dr. Humphries conducted a consultative examination of Allen. R. 380–85. Allen reported neck pain exacerbated by neck movement and low back pain exacerbated by bending, lifting, standing, and walking. R. 380. Dr. Humphries explained that Allen can walk an eighth of a mile "on a good day." Id. Dr. Humphries found that Allen's range of motion in his neck was mildly reduced and his range of motion in his back was moderately reduced. R. 381. Dr. Humphries found that Allen's strength was within normal limits. R. 382. Dr. Humphries diagnosed chronic cervical, thoracic, and lumbar strains with degenerative joint disease and chronic left shoulder strain. R. 382–83. Dr. Humphries explained that Allen is limited to (1) sitting, standing, and walking six hours in an eight-hour workday; (2) lifting 25

---

[5] The relevant period spans December 4, 2012—Allen's amended alleged date of the onset of his disability—to June 7, 2016—the date of the ALJ's decision.

9

pounds frequently and 50 pounds occasionally; (3) occasional climbing, stooping, kneeling, crouching, and crawling; and (4) never performing left foot controls. R. 383. Dr. Humphries explained that Allen has no limitations with heights, hazards, or fumes. Id.

Allen received physical therapy from Jim Fedison, PT, February through April 2012. R. 387–401. In February 2012, Allen reported pain in the left side of his neck and left shoulder starting approximately two months earlier. R. 401. Allen stated that he pulled a shoulder muscle in 2000 and tore his left biceps tendon in 1999. Id. Mr. Fedison found that Allen had decreased cervical range of motion, "pain and inflammation to left upper trap and levator parascapular region," normal shoulder muscle range of motion, and normal strength in his bilateral lower extremities. Id. In late February and early March, Allen reported temporary relief lasting two to three days from physical therapy. R. 398–400. In early to mid-March, Allen reported soreness in his neck after working and using a computer. R. 394–97. Allen reported slight improvements in his neck soreness in late March, and Mr. Fedison explained that he had "no complaints of pain with treatment." R. 390–93. By mid-April, Allen reported that "his neck is doing better overall[, b]ut he is still taking ibuprofen." R. 387. Mr. Fedison discharged Allen from physical therapy and instructed him to continue with the home exercise program. Id. Allen did not seek further medical treatment for his neck, left shoulder, or lower back pain until November 2015.

On October 31, 2013, Allen saw Charles Long, M.D., reporting pain in his right foot after stepping on an unknown object three weeks prior. R. 507. X-rays showed a 1.4 cm linear metallic foreign object in Allen's right foot. R. 506. On November 5, 2013, Allen saw Marc A. Platt, DPM, regarding the foreign object in his right foot, which Allen believed was a wire. R. 485–90. On physical examination, Dr. Platt found mild pain and minimal edema in Allen's right foot. R. 487. Dr. Platt attempted to surgically remove the wire twice, but was not able to

10

locate it. R. 488. Dr. Platt informed Allen that the wire may come out on its own or, if it remains embedded, may not cause him pain at all. Id. However, Dr. Platt informed Allen that a more invasive surgery will need to be conducted if the wire remains embedded in his foot and causes pain. Id. On follow up, Allen did well and the incision healed as expected. R. 491-498. Dr. Platt removed the sutures in Allen's right foot on November 25, 2013. R. 498. Allen did not seek further medical treatment for his right foot during the relevant period.

Allen saw Robert S. Lucas, M.D., in April 2015 for a general check-up. R. 555. Dr. Lucas found that Allen "enjoys his usual activities," walks without difficulty, and is "[a]ble to move to and from seated positions easily." Id. Allen followed up with Dr. Lucas in May 2015, and his physical examination was the same, although Dr. Lucas noted that Allen did not suffer from fatigue or weakness. R. 554.

Allen returned to Dr. Lucas in October 2015 and stated that he was feeling well. R. 553. Dr. Lucas found that Allen walks without difficulty and can transfer from sitting to standing easily. Id. Allen followed up with Dr. Lucas in November 2015, reporting pain in his neck that had worsened in the last two to three years. R. 552. Allen stated the pain is exacerbated by watching television and cold or rainy weather. Id. Dr. Lucas found that Allen could walk and transfer from sitting to standing without difficulty. Id. Dr. Lucas referred Allen to orthopedics for further evaluation and treatment. Id. Allen did not seek further medical intervention for pain in his neck, left shoulder, or lower back during the relevant period.

Substantial evidence supports the ALJ's decision to give less weight to the portion of Dr. Humphries's opinion limiting Allen to standing and walking two hours in an eight-hour workday. The ALJ discussed Allen's medical history in detail, his daily activities, his testimony at the administrative hearing, his subjective disability reports, and the medical opinions. The ALJ

concluded that the objective medical evidence did not support Dr. Humphries's standing and walking restrictions. The ALJ explained that Dr. Humphries's November 2013 opinion was rendered close in time to the date of Allen's right foot injury (October 2013) and resulting surgery to attempt to remove it (November 2013). Allen experienced much pain around this time. The ALJ cited records of Allen's visits with Dr. Platt, where Allen was told that the wire may come out on its own, but a more invasive surgery would have to be conducted if Allen continued to experience pain. Allen did not have a second surgery on his right foot.

After November 2013, Allen did not mention his right foot to his physicians again. In fact, physical examinations conducted during subsequent medical appointments showed that Allen had no difficulties with moving or transitioning from sitting to standing. Allen also reported that he is able to enjoy his daily activities.

The ALJ abided by § 404.1527(c) in rejecting the standing and walking limitations in Dr. Humphries's consultative opinion. The ALJ did not "rel[y] on cherry-picked evidence skewed to contradict [Dr. Humphries]." Brown, 873 F.3d at 267. Here, substantial evidence supports the ALJ's decision to give less weight to Dr. Humphries's opinion, as it was inconsistent with the objective medical evidence during the relevant period.

## **RECOMMENDED DISPOSITION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Allen's claim for benefits and in determining that his physical and mental impairments would not significantly limit his ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision

be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Allen's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter:  August 13, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge